EDWARD WEIL AND DOROTHY WEIL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55890. Filed June 28, 1957.

*William Walzer, Esq.*, for the petitioners.
*Martin D. Cohen, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Two principal controversies must be disposed of in determining here whether respondent was correct in applying to the gain realized by petitioners the provisions of section 117 (m), 1939 Code, because the corporation of which they sold the stock was "collapsible." [2]

Petitioners first contend that respondent's regulations, which require that the intention to collapse the corporation must occur during "construction," [3] are an invalid and unenforcible interpretation of the statute. The main thrust of petitioners' position appears to be that the intention must exist at the time of the formation of the corporation, or, at the latest, at the time when it is determined to use the corporation for any of the specified purposes. As we understand the effect of this position, it is that where respondent relies upon the formation of the corporation, the "view to" taking the designated action must exist; and that similarly, if respondent relies upon the "availed of" language, the described purpose must exist at the time the corporation is first availed of.

It seems to us that this is an unnecessarily restrictive approach to the interpretation of the section. While the precise question did not have to be and was not disposed of in the case of *Raymond G. Burge*,

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.
  (m) COLLAPSIBLE CORPORATIONS.—
      •     •     •     •     •     •     •
    (2) DEFINITIONS.—
      (A) For the purposes of this subsection, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, or for the holding of stock in a corporation so formed or availed of, with a view to—
        (i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, or producing the property of a substantial part of the net income to be derived from such property, and
        (ii) the realization by such shareholders of gain attributable to such property.
[3] Regulations 111:
  SEC. 29.117–11 (*b*). *Determination of collapsible corporation.*—* * * A corporation is formed or availed of with a view to the action described in section 117 (m) (2) (A) if the requisite view existed at any time during the * * * construction * * * referred to in that section. Thus, if the sale * * * is attributable solely to circumstances which arose after the * * * construction * * * (other than circumstances which reasonably could be anticipated at the time of such * * * construction * * *) the corporation shall, in the absence of compelling facts to the contrary, be considered not to have been so formed or availed of. However, if the sale * * * is attributable to circumstances present at the time of the * * * construction * * * the corporation shall, in the absence of compelling facts to the contrary, be considered to have been so formed or availed of.

28 T. C. 246, respondent's regulations, to the extent that they were there involved, were uniformly approved. We think, in the present instance, the latitude necessary to permit administrative officers to construe legislation in such a manner that its fundamental purpose will be achieved requires that in this respect also the regulation must be given effect and that it must be viewed as a reasonable interpretation of the section and in no way contrary to its language.

For similar reasons we regard it as necessary to give the words "at the time of * * * construction" when used in the regulation their fullest effect—that is, to treat them as including all periods until completion of construction and not something less.[4] This seems to us required if the legislative purpose is not to be thwarted. The statute is concerned with the realization of "net income from the property." It aims at a situation where, before a substantial part of that net income has been realized, the individual stockholders take action designed to result only in capital gain. But net income would ordinarily not be susceptible to realization until completion of whatever activity of the corporation was designed to create that income. The word "construction" when used in the regulation must be treated in the light of this concept so that the project should not be considered constructed until it is in shape to begin to realize net income. Partial completion, near completion, or even substantial completion are thus not effective substitutes for full completion of the "construction."[5]

The second controversy is basically factual and has, in effect, been disposed of in our findings. Petitioners insist that even construing the regulation as we have, the facts show that "the view to" taking the critical action, that is, in this case the sale of the stock, did not originate until after construction had been completed. This requires a determination first, of when the intention to sell the stock was formed, and second, of when the project was actually completed. As to the former, petitioners frankly and fairly concede that "[r]espondent and petitioners agree that one's intent, as stated in self-serving testimony, must be tested against the background of outside factual circumstances." They urge, however, that their intention to sell the stock resulted from a combination of three circumstances, as to which they could not have had knowledge prior to the time fixed by them. Even giving effect to these circumstances, and particularly to the admitted fact that the determinate decisions were made by petitioners' co-

---

[4] Having once concluded that the intention to sell the stock was definitely formed within the prescribed period, we need not go further and consider whether the intention to sell may also have existed at an even earlier time "as a recognized possibility."

[5] This interpretation is borne out by section 117 (m) (3) (C) : "[T]his subsection shall not apply to gain realized after the expiration of three years following *the completion of such * * * construction * * *.*" Emphasis added.

stockholder, Atlas, we have found as a fact that the decision to sell the stock was fixed not later than late November or early December.

The date of full completion, on the other hand, it seems to us, could not have been earlier than January. Petitioners again concede "that the instant case is a perfect example of a situation where the date of completion * * * is subject to argument and doubt." But we think that here the record makes the date of full completion fairly clear. The purpose of the construction was a shopping center. While the structure itself may have been substantially completed by the middle of December, the work remaining to be done, such as the construction of a retaining wall and the completion of a parking area to make the project serviceable, was an integral and necessary aspect of the construction, and was required to be finished before the whole could be placed in effective operation. Employing the approach to the word "construction" which we have applied in dealing with its meaning in the regulation, it seems to us that final completion could not be fixed earlier than the time when the project was ready to begin earning a "substantial part" of the "net income," the earliest date for which is that set out in our findings.

In addition to the foregoing, petitioners make two further arguments. They say, first, that respondent's determination was arbitrary since he made no subsidiary determination but charged merely that petitioners were taxable with ordinary income under section 117 (m). The examining agent's report, upon which respondent's determination appears to have been based, is likewise lacking in specific statements as to the actions upon which the determination rests. We are not persuaded that the determination should be disregarded for that reason. Respondent's characterization of the situation as one covered by section 117 (m) incorporates such necessary supporting conclusions as would be required to bring that section into operation. *Smoot Sand & Gravel Corp.* v. *Commissioner*, (C. A. 4) 241 F. 2d 197, 208, affirming on this point T. C. Memo. 1956–82, certiorari denied 354 U. S. 922. At least in the absence of a motion to make respondent's position more definite, and certainly on this record where the proceedings make it clear that petitioners were not misled, the contention must fail.

Finally, it is insisted that since the statute does not apply to years ending prior to December 31, 1949, it should not be invoked here because the contract to sell the stock was entered into prior to that date. To this the short answer is that, by its terms, section 117 (m) applies "with respect to gain realized after" December 31, 1949. Sec. 212 (b), Revenue Act of 1950. Petitioners were presumably on the cash basis, at least as far as this record shows. As such they realized no gain from the sale of the stock until March 1950 when the

stock was transferred and the purchase price received. They so treated it in their own income tax return.

On all the grounds stated, we see no reason why section 117 (m) should not be given its full effect here.

Reviewed by the Court.

*Decision will be entered for the respondent.*