OPINION. Raum, Judge: This case presents the question whether gains realized by petitioners upon receipt of cash distributions from Kingsway Developments, Inc., and upon the sale of their stock in that corporation, are taxable pursuant to section 117 (m) of the Internal Revenue Code of 1939 as though the gains were attributable to property which is not a capital asset. Kingsway was incorporated to construct and own an apartment house development, consisting of three buildings, under section 608 of the National Housing Act. The fact that the proceeds of the FHA-insured mortgage were in excess of the cost of the property was responsible in substantial measure for the availability of the cash funds that were distributed to petitioners. Moreover, such excess was anticipated at least as far bach as “November or December” 1949. And although petitioners may not have felt sure that such excess could be distributed to them, we are satisfied that they definitely recognized the possibility of such distribution long before the project was completed. The basic problems involved herein have been extensively litigated in a number of recent cases, and although there may be factual differences to a greater or lesser degree as to each of the issues, each issue presented herein has been disposed of adversely to the petitioners’ position in at least one or more of the following cases: Raymond G. Burge, 28 T.C. 246, affirmed 253 F. 2d 765 (C.A. 4); Edward Weil, 28 T.C. 809, affirmed per curiam 252 F. 2d 805 (C.A. 2); Arthur Sorin, 29 T.C. 959, on appeal (C.A. 2); Carl B. Rechner, 30 T.C. 186; Glickman v. Commissioner, 256 F. 2d 108 (C.A. 2), affirming a Memorandum Opinion of this Court; Elizabeth M. August, 30 T.C. 969, on appeal (C.A. 3); Leland D. Payne, 30 T.C. 1044, on appeal (C.A. 5); Rose Sidney, 30 T.C. 1155. 1. Petitioners contend earnestly that the withdrawal of the cash from Kingsway and the sale of the Kingsway stock were prompted by their disagreement with Markowitz and that they thus had a “post-construction motive” which rendered section 117 (m) inapplicable.[2] There are at least several short answers to this contention. In the first place, friction with Markowitz arose before completion of the project, even if completion be assumed to have occurred near the end of June, as urged by petitioners. But the project was not completed at that time, for it has been held that “under the correct interpretation of the statute ‘construction’ should be defined technically to mean dll construction required to perform the contract completely.” (Emphasis added.) Glickman v. Commissioner, 256 F. 2d 108, 111 (C.A. 2); Weil v. Commissioner, 28 T.C. 809, 815, affirmed 252 F. 2d 805 (C.A. 2). We are satisfied from the final FHA inspection report, the final requisition and advances, and all activities in connection with “finaling out” of tlie mortgage that construction was not fully completed until after July, subsequent to the decision to withdraw cash from Kingsway and sell the stock. Moreover, apart from the Marko-witz conflict, it is clear on this record that the availability of excess cash was recognized many months before the Markowitz dispute came to a head. Regulations 111, section 29.117-11 (b) states that the requisite “view” exists if the sale of stock or the distribution to shareholders is contemplated “unconditionally, conditionally, or as a recognized possibility” and, further, that the view exists during construction if the sale or distribution is attributable to “circumstances which reasonably could be anticipated at the time of such * * * construction.” Cf. Elizabeth M. August, 30 T.C. 969, 979, 980. Certainly, petitioners, upon whom the burden rests, have not convincingly shown that that distribution was not a “recognized possibility.” To be sure, they may have had some doubts, but they unquestionably recognized that such doubts could be resolved in their favor. 2. As a second argument petitioners maintain that Kingsway was not a “collapsible corporation” because the distribution and sale did not take place “prior to the realization of a substantial part of the net income to be derived from such property.” They point out that Kingsway had net income of $12,868.39 as of September 30, 1950, when the distribution and sale took place, and that, except for the fiscal year ending January 31, 1951, Kingsway had net losses in each fiscal year up to and including the fiscal year ending January 31, 1956. Therefore, it is urged, Kingsway’s net income as of September 30, 1950, represented a substantial part of the net income to be derived from the property. In the light of previously decided cases, we see no merit in this argument. In determining net income from the property as of September 30, 1950, petitioners included the mortgage premium of $47,017.50 received from Lincoln upon “final-ing out.” Although this premium was properly included in Kings-way “net income” for ordinary tax reporting purposes, we have previously held that “such receipts did not constitute ‘net income to be derived from such property’ within the meaning of section 117 (m) (2) (A) (i) when the property constructed by the corporations consisted of apartment buildings.” Rose Sidney, supra at 1163. "When the mortgage premium is eliminated, net income from the property as of September 30, 1950, becomes a net loss. Furthermore, our statement in Leland D. Payne, supra at 1057, is equally applicable here: the net income expectations of such heavily indebted corporations will necessarily be nonexistent or small during the first years of operation and * * * a normal return of profit to the stockholders can be anticipated only upon a decrease in outstanding corporate indebtedness and, as an incident thereto, reduced interest payments. Inasmuch as the F.H.A.-insured mortgages require the repayment o£ mortgage loans through equal payments over a period of 391 months, it seems reasonable to conclude that the first 7 years of operation do not provide a fair sampling of corporate net income expectations. The project analysis estimate with respect to Kingsway supports this conclusion here. 3. Finally, petitioners argue that section 117(m) is inapplicable because not more than 70 per cent of the gain was attributable to the property constructed. Sec. 117(m) (3) (B). Despite an elaborate analysis of the “sources to which gain is attributable,” submitted by petitioners, it is our opinion that their position is unsound. At the formation of Kingsway, its only asset was land carried at a cost of $44,567.96. The only activities in which Kingsway engaged were negotiations to secure adequate financing for the construction of a housing project, actual construction of the project, and subsequent rentals of apartments therein for a period of several months. After these activities, petitioners and Markowitz were able to distribute corporate funds and sell their stock at a gain to themselves of $273,637.04 The only possible sources of this gain were the aforementioned corporate activities and their effect on corporate net income and the value of corporate assets. Petitioners have certainly not demonstrated otherwise. They argue that the Kingsway tract had a value of $150,000 at the time it was transferred to the corporation in exchange for stock, that this transfer occurred prior to any construction, and that, therefore, the difference between land value of $150,000 and land cost of $44,567.96 was not attributable to the property constructed. We disagree. The figure of $150,000, even if otherwise sound — and we do not accept it as such — does not represent land value apart from subsequent construction of the project. The increase in value of the land that is attributable to its use in a section 608 project has been viewed as part of the profit relating to the property constructed for purposes of the 70 per cent rule. See Glickman v. Commissioner, supra at 111; Elizabeth M. August, supra at 987; Leland D. Payne, supra at 1058. It should be noted in this connection that the amount of $216,300 distributed to petitioners and Markowitz virtually equaled the amount of $216,101.86 by which mortgage loan proceeds exceeded the cost basis in buildings and equipment recorded on Kingsway’s books and reported in its tax return. This fact alone provides a clear basis for the inference that petitioners themselves regarded the entire corporate distribution as attributable to the excess mortgage loan proceeds rather than to any increase in value of the land. Furthermore, the gain of $273,637.04 realized by petitioners and Markowitz on the distribution and sale was only slightly in excess of the $262,301.86 revaluation surplus, which surplus arose entirely from revaluation of the buildings and equipment. The fact that a portion of this increase in value might have been attributable to petitioners’ activities prior to the formation of Kingsway does not affect our conclusion. In J. D. Abbot, 28 T.C. 795, affirmed 258 F. 2d 537 (C.A. 3), we 'held that such preliminary steps as the securing of FHA commitments, whether carried out by taxpayers individually or by a corporation subsequently formed to construct and operate the property, were encompassed within the term “construction.” Petitioners advance numerous other arguments in an effort to show that more than 30 per cent of the gain was attributable to sources other than the property constructed. For example, they contend that both the mortgage premium and the excess mortgage proceeds were so attributable. These contentions, and others put forward by petitioners, have all been disposed of adversely to their position in the cases cited at the outset of this Opinion and do not require further discussion at this time. Decisions will be entered for the respondent. The inapplicability of section 117 (m) -where the “view” or motive arises after construction is not spelled out in section 117 (m). That result rests merely upon Regulations 111, section 29.117-11 (b), which may be unduly favorable to petitioners, as noted by the Court of Appeals in Glickman v. Commissioner, 256 F. 2d 108, 111. However, this Court has previously accepted the regulations as valid. See Carl B. Rechner, 30 T.C. 186. But cf. Leland D. Payne, 30 T.C. 1044; Rose Sidney, 30 T.C. 1155. It is not necessary here to reexamine the validity of these regulations, because, as in the Payne and Sidney cases, petitioners fail to bring themselves within such regulations.