ERWIN GERBER AND RUTH B. GERBER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60355. Filed September 18, 1959.

*Murray M. Weinstein, Esq.,* for the petitioners.
*John J. Hopkins, Esq.,* for the respondent.

#### OPINION.

RAUM, *Judge:* Petitioners, husband and wife, filed a joint income tax return for the calendar year 1950 with the collector of internal revenue for the district of New Jersey. The Commissioner determined a deficiency in the amount of $39,051.42, based upon four adjustments, three of which are not contested. The fourth treated a gain of $68,906.38 that was realized upon the sale of stock in three corporations as ordinary income under section 117(m) of the Internal Revenue Code of 1939 rather than as long-term capital gain, as reported in the income tax return.

After the pleadings had been filed, the trial of this case was continued four separate times on petitioners' motions. The second, third, and fourth of those motions were on the ground that there were pending for decision various other cases involving basically the same issues presented in the instant proceeding, and the decisions in those cases might well result in the elimination of any need for trial in the present case. The second motion referred to five specific cases pend-

ing in this Court. The third motion referred to four cases pending in the Courts of Appeals, and stated as follows:

2. There are presently pending for decision by three different Circuit Courts of Appeal at least four appeals (with the argument date of the appeal set forth in parentheses) :

*Burge* v. *Commissioner*, Fourth Circuit (Jan. 17, 1958)

*Weil* v. *Commissioner*, Second Circuit (week of Feb. 3, 1958)

*Glickman* v. *Commissioner*, Second Circuit (week of Feb. 3, 1958)

*Abbott* v. *Commissioner*, Third Circuit (March 1958)

The opinions rendered on these appeals, particularly the first three cases above listed, because they involve basically the same issues presented in the instant proceeding, may well result in the elimination of any need for the trial of this proceeding.

The fourth motion referred to the same four cases mentioned in the third motion, noted that two of them had already been argued, and made somewhat similar representations about the possibility of eliminating any need for trial of the instant proceeding.

All four of those cases have been decided adversely to the petitioners therein. *Burge* v. *Commissioner*, 253 F. 2d 765 (C.A. 4), affirming 28 T.C. 246; *Weil* v. *Commissioner*, 252 F. 2d 805 (C.A. 2), affirming per curiam 28 T.C. 809; *Glickman* v. *Commissioner*, 256 F. 2d 108 (C.A. 2), affirming a Memorandum Opinion of this Court; *Abbott* v. *Commissioner*, 258 F. 2d 537 (C.A. 3), affirming 28 T.C. 795. And every ground outlined in petitioners' pleading herein as to the inapplicability of section 117(m) has been adjudicated adversely to their position in at least one or more of those cases. Moreover, decisions have been rendered in still other cases reaching similar results. *Arthur Sorin*, 29 T.C. 959, on appeal (C.A. 2); *Carl B. Rechner*, 30 T.C. 186; *Elizabeth M. August*, 30 T.C. 969, affirmed 267 F. 2d 829 (C.A. 3); *Leland D. Payne*, 30 T.C. 1044, affirmed 268 F. 2d 617 (C.A. 5); *Rose Sidney*, 30 T.C. 1166, on appeal (C.A. 2); *R. A. Bryan*, 32 T.C. 104; *Max Mintz*, 32 T.C. 723; *C. D. Spangler*, 32 T.C. 782; *Lewis S. Jacobson*, 32 T.C. 893; *Ellsworth J. Sterner*, 32 T.C. 1144.

In view of the various adjudications petitioners do not deny that each of the three corporations was "collapsible" within the meaning of section 117(m)(2)(A); they argue instead that the provisions of section 117(m) are nonetheless inapplicable by reason of the limitation in section 117(m)(3)(B) which provides:

(3) LIMITATIONS ON APPLICATION OF SUBSECTION.—In the case of gain realized by a shareholder upon his stock in a collapsible corporation—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(B) this subsection shall not apply to the gain recognized during a taxable year unless more than 70 per centum of such gain is attributable to the property so manufactured, constructed, produced, or purchased; and

No such issue is presented in the pleadings. Under our rules the petition must clearly set forth each assignment of error and must al-

lege facts to support each assignment.[1]  It is true that paragraph 4 of the petition alleges generally that the Commissioner erred in holding that the gain in question was "ordinary income under the provisions of 117(m) of the Internal Revenue Code of 1939."  But paragraph 5, which recites the factual allegations in support of the assignment of error in paragraph 4, contains nothing whatever pertaining to section 117(m)(3)(B), the issue which petitioners now seek to present to the Court.  To the contrary, all the allegations in the petition are directed toward issues of the type that were considered and adjudicated contrary to petitioners' position in the cases cited above. However, in view of the fact that the respondent was apparently prepared at the trial to litigate the new issue, and presented evidence in connection therewith, we think he was not prejudiced by the state of the pleadings, and, since he does not press the point, we will treat the issue as being properly before us.  We have therefore examined the merits of that issue, but are of the opinion that petitioners have failed to bring themselves within the exception spelled out in section 117(m)(3)(B).

The principal facts relating to that issue have been stipulated.  It becomes necessary to make one additional finding, which we hereby make, namely, that more than 70 per cent of the gain realized upon the sale of the stock in each of the three corporations was attributable to the property constructed.  The stipulated facts and the evidence leading to the foregoing finding will be discussed briefly.

Erwin Gerber has been a practicing architect for 33 years, specializing in apartment houses.  From 1935 to 1944 he was employed by the Federal Housing Administration (FHA) as deputy chief architect and also as chief architect in charge of FHA-insured apartment buildings.  He described his present firm as "probably the biggest firm of apartment house architects in the country."

During 1948 petitioners and others organized three corporations for the purpose of constructing 3-story apartment houses in East Orange, New Jersey.  Financing was to be obtained on the basis of FHA-insured mortgages, pursuant to section 608 of the National Housing Act.  Such apartment houses differed from the so-called garden-type apartment developments that are usually located in the sub-

---

[1] Rule 7(c)(4) requires that:
(4) The petition shall contain:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(B) Numbered paragraphs stating:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

4. Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency. \* \* \* Each assignment of error shall be lettered.

5. Clear and concise lettered statements of the facts upon which the petitioner relies as sustaining the assignments of error, except those assignments of error in respect of which the burden of proof by statute is placed upon the Commissioner.

urbs, and they also differed from the taller, elevator, so-called luxury-type apartment buildings. Each of the three corporations took its name from the address of the particular project in East Orange, namely, Sixty-Six Melmore Gardens, Inc., 444 Prospect Street Corp., and 266 South Harrison Street Corp. Gerber appears to have been the dominant figure in each of these corporations.

266 South Harrison Street Corp. was organized on or about March 4, 1948. Of the 25 shares of common stock issued, 1 share was issued to Gerber, 23 shares to his wife, and 1 share to a relative. On or about April 24, 1948, the corporation acquired land at 266 South Harrison Street, East Orange, New Jersey, at a cost of $22,000. Pursuant to a mortgage insurance commitment issued by FHA on March 22, 1948, the corporation constructed a 102-room apartment house on the land. Petitioners and the other stockholder sold their stock in this corporation on December 31, 1950; the aggregate gain realized on the sale was $40,813.14 of which $39,180.61 (96 per cent) was allocable to petitioners and $1,632.53 (4 per cent) to the other stockholder. Thirty per cent of the aggregate gain realized on the sale of this stock is $12,243.94.

Sixty-Six Melmore Gardens, Inc., was organized by Gerber and 3 business associates on or about March 4, 1948. Each of the 4 organizers owned 25 per cent of the common stock. On June 28, 1948, the corporation acquired land at 66 Melmore Gardens, East Orange, New Jersey, for $9,340. Pursuant to a mortgage insurance commitment issued by FHA on February 23, 1949, the corporation constructed a 135-room apartment house on the land. Gerber and the 3 other stockholders sold their stock on December 31, 1950, realizing an aggregate gain of $38,154.76, or a gain of $9,538.69 to each of them. Thirty per cent of the aggregate gain realized on the sale of stock is $11,446.43.

444 Prospect Street Corp. was organized on or about July 1, 1948. Of the 10 shares of common stock issued, Gerber owned 1 share, his wife owned 8 shares, and the remaining share was owned by a relative. On or about July 8, 1948, the corporation acquired land located at 444 Prospect Street, East Orange, New Jersey, for $11,000. Pursuant to a mortgage insurance commitment issued by FHA on April 7, 1948, the corporation constructed a 132-room apartment house on the land. Petitioners and the other stockholder sold their stock on February 28, 1950; the aggregate gain realized on this sale was $22,430.09 of which $20,187.08 (90 per cent) was allocable to petitioners and $2,241.01 (10 per cent) to the other shareholder. Thirty per cent of the aggregate gain realized on the sale of this stock is $6,729.03.

On their income tax return for 1950, petitioners treated the gain upon sale of their stock in the three corporations as capital gain. The Commissioner determined that each of the corporations was a

"collapsible" corporation, as that term is defined in section 117(m)(2) (A) of the 1939 Code, and that therefore the gain realized upon each sale is to be considered as attributable to property which is not a capital asset. As noted above, petitioners do not presently deny that each of the three corporations was "collapsible" within the meaning of section 117(m)(2)(A)—although that was essentially the contention supported by the only facts alleged in their pleading. Rather, they now argue that "at least 30 per cent of the gain on each sale was attributable to increment in land values," with the consequence that the limitation in section 117(m)(3)(B) renders section 117(m) inapplicable.

Petitioners' evidence was concerned largely with an attempt to establish a value for each parcel of land at the date of sale of the stock in an amount such that the excess of such value over the cost of the land was more than 30 per cent of the gain realized. Their principal witness was a real estate expert who testified that in his opinion the fair market value of the South Harrison Street land was $34,800, the Melmore Gardens land $22,800, and the Prospect Street land $18,500, each as of the respective date of sale of the pertinent stock. These values, as simple arithmetic will demonstrate, represented an increase over cost that is somewhat in excess of 30 per cent of the gain realized with respect to the stock of each of the three corporations. However, the values given by petitioners' expert witness were sharply challenged by an expert witness for the Government. Petitioners' witness used an "effective front foot" method of valuation, as related to certain sales of land that were regarded as "comparables." The Government's witness, on the other hand, insisted that a square foot, or area method, was more accurate when valuing land for apartment house purposes. We need not resolve this conflict because, even upon the effective front foot method it is doubtful whether petitioners' expert made appropriate adjustments for the depth of the plots. He used 150 feet as the standard depth of a lot and added a factor of 20 per cent for additional depth. On the other hand, we have persuasive evidence presented by the Government's expert witness that the most advantageous depth of a lot for apartment house purposes is about 300 feet. Accordingly, in view of our doubts as to whether petitioners' expert properly used 150 feet as the standard depth, and in view of the further fact that even his figures produced an increase over cost that was only slightly in excess of the 30 per cent margin, we have concluded that petitioners have failed to carry the burden of proof to bring themselves within section 117(m)(3)(B).

Moreover, they have failed to carry their burden for an additional reason, even if it be assumed that the valuations given by their expert

are to be accepted. Section 117(m)(3)(B) provides that the collapsible corporation provisions "shall not apply to the gain * * * unless more than 70 per cent of such gain is attributable to the property so manufactured, constructed, produced, or purchased." And it has been held that an increase in the value of land brought about by an apartment house development on such land must be included in the gain that is "attributable to" the property constructed or produced. *Max Mintz, supra.* See *Glickman* v. *Commissioner, supra* at 111; *Elizabeth M. August, supra* at 987 (issue as to section 117(m)(3)(B) not raised on appeal); *Leland D. Payne, supra* at 1058, 268 F. 2d at 621. In other words, to the extent that any increase in land value is due to the building project it may not be included in the nonconstruction margin of gain which petitioners have attempted to show as being in excess of 30 per cent of the total gain.

Petitioners argue that their witness's valuations are based upon the general increased values of land suitable for apartment house developments (which may have been brought about by the FHA program), and not upon the value of the particular parcels of land, as enhanced by the building projects themselves. Although the witness's testimony may have been phrased in some such terms, it is clear on this record that at least a substantial portion of the increased land value was directly attributable to the building projects themselves. Gerber himself testified that he was the first builder in East Orange to construct 3-story apartment houses under the section 608 mortgage insurance program. He testified: "I was the first one, and I led the way for the other builders. The other builders couldn't believe it could be done, and I showed them." Corporations organized by petitioners acquired land, planned, financed, and constructed apartment houses thereon, and then sold the improved property for a substantial gain. As a practical matter, we think it would be ignoring the obvious to conclude, as petitioners suggest, that no portion of the alleged increase in land values was "attributable to" the property constructed. *Max Mintz, supra.*

To be sure, Gerber's leadership in this field may have induced others to participate in the FHA program, with the consequence that the level of land values for such sites increased generally. But it is at least equally plain that the very projects which showed the way to other builders were the ones before the Court and at least part of the increase in relation to these parcels of land was attributable to the buildings that were placed upon them. Petitioners have completely failed to show that, excluding the increment in land values due to the construction itself, there still remained a further increase that was equal to at least 30 per cent of the gains in question.

It is by reason of petitioners' failure of proof, both in this regard and as earlier set forth, that we have made the finding that more than 70 per cent of the gain realized upon the sale of the stock in each of the three corporations was attributable to the property constructed.

*Decision will be entered for the respondent.*