PAUL BRAUDE AND ANNE BRAUDE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH E. MUSON AND BEATRICE HAKMAIER MUSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 78143, 78146. Filed March 31, 1961.

*Joseph E. Muson*, pro se, and *Herbert Redbord, Esq.*, for the petitioners.

*Gerald J. Robinson, Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined the following deficiencies in income tax and additions to tax for the year 1950:

| Docket No. | Deficiency | Additions to tax, I.R.C. 1939 | |
| --- | --- | --- | --- |
| | | Sec. 294(d)(2) | Sec. 294(d)(1)(A) |
| 78143 | $11,488.50 | $689.31 | $1,033.95 |
| 78146 | 2,605.40 | | |

The questions for decision are (1) whether the gains from cash distributions made by a corporation are to be treated as ordinary income under section 117(m) of the Internal Revenue Code of 1939 rather than as long-term capital gain, as reported in the income tax returns, and (2) whether the Commissioner properly determined the addition to tax under section 294(d)(1)(A) for failure to file a declaration of estimated tax.

The Commissioner has conceded that there is no addition to tax under section 294(d)(2).

FINDINGS OF FACT.

Some of the facts are stipulated, are so found, and the stipulation, together with the pertinent exhibits, is included herein by this reference.

Petitioners Paul Braude and Anne Braude are husband and wife and reside in Mount Vernon, New York. Petitioners Joseph E. Muson and Beatrice Hakmaier Muson are husband and wife and reside in Harrison, New York. Joint income tax returns for both couples were filed for 1950 with the collector of internal revenue for the fourteenth district of New York.

In 1938 McKinley Studios, Inc., all stock of which was owned by Paul Braude, started construction of an apartment house in Mount Vernon, New York. After the foundation and part of the structural steel were completed, work was stopped. McKinley Studios, Inc., remained dormant until 1949 when it was liquidated.

Esplanade Apartments, Inc., was formed in 1949 with capital stock issued in the amount of $2,000. The stock of the corporation was owned 79 percent by Paul and Anne Braude and 21 percent by Beatrice Muson. Upon the liquidation of McKinley Studios, Inc., in 1949, Braude, its sole stockholder, received the assets, including the land and structural steel, which he thereupon transferred to Esplanade Apartments, Inc. This transfer by Braude to Esplanade was recorded on the books of the latter as a loan payable. The books of Esplanade Apartments, Inc., recorded the transaction as follows: Construction and foundation, $37,989; land, $13,000; miscellaneous, $25, recorded as a debit; and loans payable Braude, $51,014, recorded as a credit.

Petitioners Paul Braude and Joseph Muson were experienced in real estate transactions involving apartment houses prior to 1947.

Esplanade Apartments, Inc., initiated action to obtain a Federal Housing Administration Project Analysis for the above project. This analysis was obtained, dated June 17, 1949. Mortgage insurance in the amount of $510,000 was requested.

Prior to commencement of construction petitioners anticipated that the cost of construction would be less than the amount of mortgage proceeds which were to be received.

Before or during construction petitioners had a view to making a distribution of the anticipated excess mortgage proceeds prior to the realization by Esplanade Apartments, Inc., of a substantial part of the net income to be derived from the property.

Construction of Esplanade Apartments was commenced in August or September of 1949 utilizing the land and steelwork transferred from McKinley Studios, Inc.

Esplanade Apartments, Inc., secured a building loan commitment in the total amount of $355,000 from the Title Guarantee and Trust

Company to be paid to the corporation in progress payments in accordance with a fixed schedule. Payments made to the corporation before May 31, 1950, totaled $355,000, as follows:

| | |
|---|---:|
| Nov. 14, 1949 | $109,500 |
| Dec. 21, 1949 | 73,000 |
| Feb. 2, 1950 | 36,500 |
| Mar. 3, 1950 | 36,500 |
| Mar. 24, 1950 | 36,500 |
| Apr. 13, 1950 | 36,500 |
| May 1, 1950 | 26,500 |
| Total | 355,000 |

Construction of Esplanade Apartments was completed in April 1950.

The corporation, in May 1950, engaged the services of C. C. Merritt & Associates of 110 East 42d Street, New York, New York, appraisers, and the value of the property owned by the corporation, Esplanade Apartments, Inc., was appraised at:

| | |
|---|---:|
| Land | $30,000 |
| Building and improvements | 530,000 |
| Total appraised value | 560,000 |

The appraisal was placed on file in the corporate records and books of account.

On May 5, 1950, the board of directors of Esplanade Apartments, Inc., passed a resolution as follows:

WHEREAS, the report of the Treasurer shows that the total cost of constructing the building owned by this Corporation amounts to $440,426.49 and the value of said building as appraised by C. C. Merritt & Associates amounts to $530,000.00; said cost of land being $13,000.00 and the valuation as shown by the appraisal being $30,000.00. Therefore, be it RESOLVED, that the valuation of said property on the corporate books of account be increased by $89,573.51 for the building and improvements, and $17,000.00 for the land, making a total of $106,573.51, and that this sum be credited on said books of account to surplus arising from revaluation.

WHEREAS, the cash position of the Corporation shows that the Treasurer is unable to pay the distribution to stockholders out of surplus arising from revaluation. Therefore be it RESOLVED, that the Corporation borrow from The First National Bank and Trust Company of Tuckahoe the sum of $65,000.00 and give its note for the repayment of same to be endorsed by all stockholders if required by the bank, and the sum of $35,000.00 from The County Trust Company and give its note for the repayment of same to be endorsed by all stockholders if required by the bank.

WHEREAS, the financial statement of the Corporation shows adequate and sufficient assets for the payment of a distribution out of surplus arising from revaluation to Stockholders for the fiscal year beginning July 27th, 1949 and ending May 31st, 1950. Therefore, be it RESOLVED, that $51,141.00 be and the same is hereby set aside for distribution to Stockholders, and the Treasurer is hereby directed to pay, prior to the end of the fiscal year, a distribution of

$51,141.00 to the holders of common stock issued and outstanding in proportion to their common stock holdings, and that upon the payment of said distribution said monies be charged on the books of account of the Corporation to surplus arising from revaluation.

On May 18, 1950, Esplanade Apartments, Inc., borrowed a total of $100,000 as follows: $65,000 from the First National Bank and Trust Company of Tuckahoe, and $35,000 from the County Trust Company. The notes were endorsed by Braude and Muson individually.

On May 18, 1950, the corporation distributed the sum of $51,141 to its stockholders and charged surplus arising from revaluation with the amount. Paul Braude, as holder of 79 percent of the capital stock, received $40,401.39. Beatrice Muson, as holder of 21 percent of the capital stock, received $10,739.61.

Esplanade Apartments, Inc., rented its first apartment in October 1949, long before construction was completed. Tenants did not begin to move in until April 1950.

In its income tax return for the fiscal year ended May 31, 1950, Esplanade Apartments, Inc., reported a tax loss of $6,092.11.

On May 18, 1950, when petitioners received the cash distribution, Esplanade Apartments had not realized a substantial part of the net income to be derived from Esplanade Apartments.

In August 1950 the Esplanade Apartments, Inc., obtained a mortgage loan of $490,000, which was an FHA-insured mortgage from Eastchester Savings Bank. The funds obtained from this loan were used to pay off the building loan of $355,000 and the two bank loans of $100,000.

In the taxable year 1950 petitioners Paul and Anne Braude reported over $10,000 net profit from business on Schedule C of their return and reported the distribution from Esplanade Apartments, Inc., in excess of $40,000. They were advised in tax matters in 1950 by a person who had been practicing accounting since 1938. This accountant knew that the Braudes received the $40,000 distribution and that capital gains in 1950 were not subject to withholding. The Braudes relied on the accountant who advised them it was not necessary to file a declaration of estimated tax for 1950 and based his advice "on my many years of preparing income tax returns and the preparation of the withholding taxes it was completely in conformance with the law at that time * * *."

Petitioners Paul and Anne Braude filed no declaration of estimated income tax for 1950. There was no reasonable cause for petitioners' failure to file such a declaration.

Petitioners Paul and Anne Braude on their income tax return for 1950 reported the $40,401.39 that was distributed to them by Esplanade Apartments as a long-term capital gain with the explanation, "Distribution from Capital (Sec. 115(d))." Petitioners Joseph and

Beatrice Muson also reported the distribution they received as long-term capital gain with the explanation, "surplus distribution arrived at through revaluation. See Section 115D."

The Commissioner determined that the distributions were taxable as ordinary income "within the purview of section 117(m) of the Internal Revenue Code of 1939." He also determined an addition to tax in the case of the Braudes for failure to file a declaration of estimated tax under section 294(d)(1)(A) of the 1939 Code.

OPINION.

The principal question here is whether Esplanade Apartments, Inc., was a "collapsible corporation" as defined in section 117(m), I.R.C. 1939. This question has become a familiar one because of the number of decided cases over the past few years in which it has been involved.

Here, as in the recent case of *Frank B. Short*, 35 T.C. 922, however, the issue is not whether the requisite "view" was present, or whether the "view" was formed at a particular time with reference to the completion date of the construction, but whether the provisions of section 117(m) are applicable at all because of the limitations of section 117 (m)(3) (B) and (C).[1]

There is no question but that petitioners realized gain from the transaction. They argue, however, that "The gain attributable to construction had no relationship to the moneys distributed to the petitioners in view of the fact that the corporation had borrowed $100,000, based solely on the credit of the individual stockholders prior to a determination of the construction total costs and had made its distribution out of a surplus arrived at through a revaluation." First, we point out that the evidence does not establish that the $100,000 loan was obtained solely on the credit of the individual stockholders. True, they did endorse the notes, but the primary obligation was that of the corporation. Further, the corporation earlier had initiated action to secure an FHA-insured mortgage in an amount which it was hoped would exceed construction costs and afford an opportunity for a distribution of the excess to share-

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.
   (m) COLLAPSIBLE CORPORATIONS.—

     *       *       *       *       *       *       *

    (3) LIMITATIONS ON APPLICATION OF SUBSECTION.—In the case of gain realized by a shareholder upon his stock in a collapsible corporation—

     *       *       *       *       *       *       *

     (B) this subsection shall not apply to the gain recognized during a taxable year unless more than 70 per centum of such gain is attributable to the property so manufactured, constructed, produced, or purchased; and

     (C) this subsection shall not apply to gain realized after the expiration of three years following the completion of such manufacture, construction, production, or purchase.

holders. The project was completed in April of 1950 and in August 1950 the FHA-insured mortgage in the amount of $490,000 was forthcoming. In the meantime, in May 1950, the corporation increased the valuation of the property on its books by some $106,000 for the purpose of creating a surplus from which a distribution could be made to shareholders. Not having sufficient cash for that purpose, bank loans were obtained so it could be done. The testimony as to negotiations for these loans is sketchy indeed. No one from the banks was called to testify. Braude himself simply testified that the money was borrowed "by notes of the corporation, individually endorsed" at the banks' insistence. There is no proof that the endorsers had individual resources on which the banks relied, and the only asset which the corporation had was the completed apartment house. It is a reasonable inference that the banks were apprised of the impending FHA mortgage and simply tided the corporation over with cash loans until the mortgage money should become available. As soon as it was available the bank loans were repaid.

Certainly had the parties waited until the mortgage proceeds were on hand and then distributed the surplus to the shareholders this case would be no different from *Glickman* v. *Commissioner*, 256 F. 2d 108 (C.A. 2), affirming a Memorandum Opinion of this Court, or *Max Mintz*, 32 T.C. 723, affd. 284 F. 2d 554 (C.A. 2), or *Erwin Gerber*, 32 T.C. 1199. In all of those cases the distributions made to shareholders from the mortgage money surplus were held to be taxable as ordinary income under section 117(m). We do not think that because petitioners here proceeded first by obtaining money for the distribution by bank loans, then making the distribution, and later paying off the loans from the mortgage proceeds should require a different conclusion.

Petitioners further contend that less than 70 percent of the gain distributed was attributable to the constructed property. They argue that the land and the steelwork which were transferred by McKinley Studios to Esplanade had appreciated in value prior to the transfer and that this fact contributed to the gain. The evidence does not support this contention. It consists of the application of "Construction Cost Indexes" published by F. W. Dodge Corp. to the property and the steelwork to arrive at an increased valuation, and an appraisal of the real estate made after construction of the project. The use of the construction cost indexes, which are general United States averages, in arriving at the value on a particular date of the particular property here involved has little, if any, probative value. And the bare appraisal of the real estate made after construction was completed, which is in evidence, does not prove that the gain is not attributable to the construction. The appraiser was not called to testify and we have nothing to support the appraisal. Furthermore,

similar contentions relative to appreciated values and their effect on whether the gain is or is not attributable to the construction have been rejected by the courts. *Glickman* v. *Commissioner, supra; Max Mintz, supra.*

The further contention of petitioners that the limitation of section 117(m)(3)(C) is applicable because the gain was realized after the expiration of 3 years following the completion of construction is unsupported by the record and calls for no comment.

We approve the Commissioner's determination that the distributions to petitioners are taxable as ordinary income within the purview of section 117(m) of the Internal Revenue Code of 1939.

On the issue of the additions to tax for failure to file a declaration of estimated tax, we think the facts speak for themselves. The accountant, it appears, had practiced accounting since 1938. At the trial he testified he is a certified public accountant, but when he became such is not shown. The advice on which Braude testified he relied was given in 1950, 10 years prior to the trial. There is nothing in the record with respect to the accountant's educational background or his experience in 1950 with respect to tax problems, except what can be gleaned from his self-serving statement that the advice he gave was "based on my many years of preparing income tax returns," etc. We think this equivocal testimony falls far short of meeting petitioners' burden of proof that the person on whom they relied was a person "qualified to advise or represent the taxpayer in the premises." *Rene R. Bouche*, 18 T.C. 144. Accordingly, we hold that petitioners have not proved that their failure to file a declaration of estimated tax was due to a reasonable cause and not to willful neglect. The Commissioner is sustained on this issue.

*Decisions will be entered under Rule 50.*