CHARLES R. LEPSON AND LINDA A. LEPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lepson v. Commissioner
Docket No. 13949-80.
United States Tax Court
T.C. Memo 1982-304; 1982 Tax Ct. Memo LEXIS 444; 44 T.C.M. (CCH) 19; T.C.M. (RIA) 82304; June 2, 1982. *444 Held, amounts paid for the purchase of a tractor and snow blower were not deductible as medical expenses. Held further, the Court will not consider an issue not raised in the pleadings. Ralph W. Levinson, for the petitioners. Sandra M. Gilmore, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge:* Respondent determined a *445 deficiency in petitioners' Federal income tax for 1977 in the amount of $ 701. Due to concessions, the only remaining issues are (1) whether the sum of $ 2,945, which is the amount paid by petitioners for a tractor with a leaf sweeper and snow blower, exclusive of sales tax, was properly claimed by petitioners as a medical expense deduction under section 213(a), [1] and (2) whether amounts paid to the Jewish Community Center were deductible as charitable contributions. Medical Expense Deduction
The driveway leading to the garage of petitioners' residence, in Rochester, N.Y., is approximately 290 feet long by 7 feet wide. It is covered by gravel and has a ridge running along the center. It is extremely difficult to clear snow from the driveway by using only a shovel, a snowplow, or a hand-held snow blower. Both petitioners have received medical treatment for back *446 problems from time to time. Early in December 1977, petitioners' physician recommended that both Mr. and Mrs. Lepson avoid shoveling snow, raking, and any other heavy or unusual activity that would put a strain on their backs. The doctor advised them to purchase a riding tractor with a snow blower and leaf sweeper. On December 3, 1977, petitioners purchased an I. H. Cub tractor with a snow blower and a leaf sweeper. On their joing 1977 income tax return, petitioners designated the tractor as a "medical apparatus" and deducted $ 2,945, the purchase price exclusive of tax, as a medical expense. On audit, respondent disallowed this deduction. Petitioners claim that the amount paid for the tractor and snow blower was a deductible medical expense under section 213 because use of the tractor and snow blower reduced the chances of their reinjuring their backs. Respondent argues, however, that it was not a medical expense but was a personal, living, or family expense, which is nondeductible under section 262. We agree with respondent. Section 213(a) allows a deduction for expenses paid for the medical care of the taxpayer, his spouse, and dependents if the expenses are not reimbursed *447 by insurance or otherwise. Expenses for medical care include amounts paid for the mitigation, treatment or prevention of disease. Sec. 213(e)(1). Although section 263 and the regulations thereunder provide that capital expenditures are generally not deductible, a capital expenditure may qualify as a medical expense if its "primary purpose" is medical care. Sec. 1.213-1(e)(1)(iii), Income Tax Regs.
Because section 213 is an exception to the general rule of section 262 that "no deduction shall be allowed for personal, living, or family expenses," it must be interpreted narrowly with respect to expenses that are conventionally understood to be personal, living, or family expenses. Atkinson v. Commissioner,44 T.C. 39, 49 (1965). Thus, expenses will not be considered medical expenses if they are primarily personal living expenses, Stringham v. Commissioner,12 T.C. 580, 584 (1949), affd. per curiam 183 F.2d 579 (6th Cir. 1950), and petitioners must show that the contested expenses bear a proximate relation to the diagnosis, cure, mitigation, treatment, or prevention of disease. Havey v. Commissioner,12 T.C. 409, 412 (1949). *448 Borrowing from tort law, the requirement of proximate relationship has been stated as a "but for" test, requiring the taxpayer to show both that the expenditure was an essential element of the treatment and that it would not have otherwise been incurred for nonmedical reasons. Jacobs v. Commissioner,62 T.C. 813, 819 (1974). Within these parameters, the determination whether an expenditure is for medical care of for personal living expenses is a question of fact. See Havey v. Commissioner,supra at 412. In examining the facts of this case, we must keep in mind that the costs of lawn mowing, leaf raking, and clearing snow are normally nondeductible personal living expenses, and that the burden of proof is on petitioners. Rule 142(a), Tax Court Rules of Practice and Procedure. Although many cases fall within a gray area, here petitioners' own testimony shows and we find that their primary motivation in purchasing the tractor and snow blower was personal and that the purchase would have been made irrespective of back injuries. The record indicates that shoveling the driveway was not feasible and that use of a snowplow, which was available *449 for hire, was unsatisfactory. The personal motivation to acquire a snow blower is thus clear. Furthermore, there is no evidence in the record from which to conclude that the snow blower they would have purchased had they not had back problems would have been any less expensive than the tractor and snow blower they actually purchased. Indeed, Mr. Lepson testified that he decided to buy a tractor with an attached snow blower because a walk-behind snow blower was "over the long-term not financially justified," and that it would not hold up long on their driveway. Although petitioners place great weight upon the fact that their doctor urged them to get a riding lawn mower and snow blower, the fact that an expenditure is recommended by a doctor is not conclusive but is only one factor to be weighed in determining whether to characterize an expense as for medical care. Jacobs v. Commissioner,supra at 819. As we have outlined above, petitioners' own testimony showed they purchased the tractor and snow blower primarily for nonmedical reasons. We therefore conclude that the $ 2,945 paid for the tractor and snow blower was not deductible as a medical expense. *450 Charitable Contributions Deduction
At trial, petitioners consistently characterized the payments to the Jewish Community Center (hereinafter Center) not as charitable contributions but as payments for summer camp attended by one of their daughters. Mrs. Lepson testified that the entire $ 216.75 was a combination of dues and summer camp enrollment fee, and that it was necessary to pay the dues in order to participate in the summer camp. Thus, petitioners have conceded that the payments were not charitable contributions to the Center. On brief, petitioners have argued that both the dues and the summer camp enrollment fee should be allowed as a credit under section 44A as a child care expenditure. Respondent objects to the allowance of a child care credit because the issue was not raised in any of the pleadings but was first raised in petitioners' testimony at trial. It is a well established principle that this Court will not consider issues that have not been pleaded. See, e.g., Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975); Frentz v. Commissioner,44 T.C. 485, 491 (1965), *451 affd. without discussion of this issue 375 F.2d 662 (6th Cir. 1967). Petitioners contend, however, that respondent, by asking Mrs. Lepson a few questions concerning the nature of the payments to the Center actually argued the child care credit issue at trial, and that we should therefore decide the issue. See Llorente v. Commissioner,74 T.C. 260, 269 (1980), revd. in part and remanded, 649 F.2d 152 (2d Cir. 1981), in which we decided a new issue not raised in the pleadings because respondent argued the issue at trial. See also, Gerber v. Commissioner,32 T.C. 1199, 1202 (1959). We conclude, however, that the few questions asked on cross-examination concerning the nature of the payments to the Center do not constitute an implied concession that the child care credit was properly in issue. [2] It should be noted, too, that respondent objected when petitioners' counsel tried to elicit a response from Mrs. Lepson stating that the payments to the Center were for child care rather than for charity. We, therefore, refrain from ruling on the child care credit issue. *452 Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Sheldon V. Ekman, who died on January 18, 1982. By order of the Chief Judge dated March 19, 1982, this case was reassigned to Judge Meade Whitaker↩ for disposition. 1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The only questions asked to Mrs. Lepson by respondent with respect to the payments to the Center were as follows: Q Now, I believe you also testified that the amount paid to the Jewish Community Center, that part of the amount was for dues. Do you recall how much was for dues? A No. Part of it was for dues which are required to be able to -- you must pay the dues in order to be able to send the child to -- Q Daycare. A -- daycare there. It's a combination type of deal. In fact, the amount we, indeed, paid was a reduced rate because we at that particular time could not afford to pay the full shot. Q So you testified that the entire $ 266.00 -- $ 216.75 was a combination of dues and payment for daycare? A Well, it was more payment for daycare than for dues because the dues was adjusted so that we could send her there. Q But you don't recall how much? A No. I don't have any breakdown at all. Q Now, I believe your other daughter was approximately 13 or 12 in 1977? A Let's see, '77? She was born in '63. She was 12. Q Now, did she also attend the daycare center? A No. Q Did your daughters -- either of them ever use -- did either of your daughters ever use any of the other facilities of the daycare center -- A No. Q -- in 1977?
A No. Q Just the -- I mean of the Jewish Community Center in 1977? A No. Just the daycare center. They had no transportation back and forth because Chuck and I were working.↩