ORLANDO THREE INC., AN ALABAMA CORPORATION (SUCCESSOR BY MERGER TO MONTY NO. 2, INC., A MICHIGAN CORPORATION), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Orlando Three, Inc. v. Commissioner
Docket No. 647-79
United States Tax Court
T.C. Memo 1983-79; 1983 Tax Ct. Memo LEXIS 710; 45 T.C.M. (CCH) 687; T.C.M. (RIA) 83079; February 7, 1983. Joe T. Booth, III, for the petitioner. Robert W. West, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for its fiscal year ended February 28, 1974, in the amount of $12,768.19. Due to a concession by petitioner, the only issue for decision is whether, under either section 165(a) [1] or section 162(a), petitioner is entitled to deduct demolition costs incurred during the remodeling of a restaurant. All of the facts have been stipulated and are found accordingly. Petitioner, Orlando Three, Inc., is a corporation which was organized under the laws of the State of Alabama. Petitioner is the successor corporation to Monty No. 2, Inc., a Michigan corporation; petitioner and its predecessor merged on June 30, 1978. At the time the *712 petition was filed in this case, petitioner's principal place of business was in Montgomery, Alabama. Petitioner timely filed its Federal income tax return for its fiscal year ended February 28, 1974, with the Internal Revenue Service Center, Chamblee, Georgia. Petitioner operates a restaurant in Montgomery, Alabama, which is a franchise of the McDonald's Corporation (McDonald's) restaurant chain. Petitioner is one of approximately 18 restaurant corporations that are owned by essentially the same shareholders. Petitioner's franchise was acquired from McDonald's on February 28, 1968; the franchise term is for 20 years. Prior to 1968, McDonald's purchased the land and constructed the building in which petitioner's restaurant is located. McDonald's installed the heating and air conditioning systems in the restaurant and owns the equipment associated with those systems. McDonald's leased to petitioner the land, building, and cooling and heating systems for a 20-year term which is concurrent with the franchise term. The original philosophy of McDonald's was to have its hamburger restaurants operate on a "takeout" basis. These restaurants were small red and white buildings *713 containing a kitchen area and a small service area where customers placed, paid for, and received their orders. None of the restaurants contained dining areas in which customers might sit to eat. In the early 1970's, McDonald's modified its customer service philosophy to provide restaurant dining areas; the "takeout" concept of selling hamburgers remained available to customers who did not desire to eat in the restaurant's dining area. To effectuate the philosophical change, the existing McDonald's restaurants generally required expansion and remodeling for inclusion of a dining area. Under the remodeling plan, the existing structures ordinarily would be lengthened and widened, and walls and counters would be relocated and the roof would be reconstructed. The remodeled restaurants would be larger and more efficient and would include seating capacity for dining. McDonald's did not require its franchise owners to remodel their restaurants; however, McDonald's strongly urged its individual franchisees to make the modifications. If the franchise owners remodeled their restaurants, McDonald's did not pay for any portion of the remodeling; the individual franchisees bore the modification *714 expenses. However, McDonald's normally would recommend a contractor to perform the remodeling work and would provide an architectural design package and building plans. From 1968 until 1973, petitioner operated its franchise as a McDonald's hamburger "takeout" restaurant. As a result of the strong urging of McDonald's, in April 1973 petitioner decided to modify its restaurant to include a dining area. McDonald's recommended Universal Howard Company (Universal) as the contractor and on April 30, 1973, Leon Hadley, as petitioner's representative, and Nelson L. Davis, as president of Universal, entered into a "Standard Form of Agreement Between Owner and Contractor," which specified the general conditions for construction. The contract provided that the contractor would perform the agreed upon construction for a total of $100,557, of which amount $97,533 was allocated to the building and $3,024 was allocated to the construction site. The agreement provided that the contractor would complete such projects as: remove winterfront, arches and structural columns of the building; move side walls; raise electrical service mast to clear mansard; move gas meter; raise existing building walks; *715 raise asphalt paving to new curb; install nonabrasive quarry tile on walk; install new rain gutters, leaders and drains; install separate wall thermostats; install new air conditioning units; move french frier; "rough in" for future fry; install new wall tile in meal preparation area; install new mica counter tops; enlarge and install certain fixtures and air conditioners in restrooms; install new lighting fixtures; tile dining and service area floors; install and assemble new seating and decor package; install under counter shelving; brick exterior of entire structure; install fiberglass panels; raise front and rear walks; and install metal curb adjacent to front walk. At the completion of the remodeling, petitioner actually paid Universal a total of $107,038 during its fiscal year ended February 28, 1974. Petitioner owned most of the movable equipment required in the operation of its restaurant, including the kitchen equipment and the furniture. Upon completion of the remodeling of petitioner's restaurant, petitioner relocated most, if not all, of its equipment and utilized it in the remodeled restaurant. Petitioner had not maintained detailed depreciation schedules listing this *716 equipment and does not know its adjusted basis in any of the individual items of equipment that may not have been utilized after modification of its restaurant. Petitioner has depreciated its leasehold improvement assets by collectively placing the assets in a depreciation account over a period of 10 years. On its Federal income tax return for taxable year ended February 28, 1974, petitioner claimed a deduction for "demolition loss" in the amount of $19,266.84. Petitioner arrived at the claimed amount by obtaining an estimate from Universal as to the percentage of the total contract price which the contractor considered to be demolition in nature. Universal estimated that 18 percent of the $107,038 remodeling cost was for work in the nature of demolition. Respondent disallowed petitioner's claimed deduction with the explanation that "the amount of $19,266.84 claimed as a demolition loss is not allowed because you have failed to establish an undepreciated cost basis in assets destroyed." Petitioner takes the position that it is entitled to a demolition loss under section 165(a) as a result of remodeling its restaurant's layout to conform to the changed philosophy of the national *717 McDonald's. Respondent asserts that none of the assets owned by petitioner were demolished during the restaurant's remodeling and that most, if not all, of the movable restaurant equipment owned by petitioner prior to remodeling was utilized in the remodeled restaurant. While petitioner's pleadings and brief are not crystal clear, it does not appear that petitioner specifically claims a demolition loss deduction for the "moving or relocating of fixtures and equipment in the building." Rather, it appears that petitioner claims a demolition loss deduction as a result of a loss which "had to do with the change in the building." [2] In any event, petitioner has totally failed to show what amount, if any, of its claimed loss is applicable to moving and relocating fixtures in the buildings. For this reason we must assume that the claimed loss is all applicable to changes made to the building. *718 Petitioner relies on section 165(a) [3] and contends that it is entitled to the claimed deduction pursuant to a reasonable interpretation of section 1.165-3, Income Tax Regs. In pertinent part, section 1.165-3(b)(1), Income Tax Regs., provides: (b) Intent to demolish formed subsequent to the time of acquisition. (1) Except as provided in subparagraph (2) of this paragraph, [here inapplicable] the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. Petitioner does not claim a loss deduction for the cost of demolishing an entire building.Rather, petitioner claims a deduction for the cost of a partial demolition of the building--the movement of walls and roof, removal of old air conditioning units, removal of old flooring, etc. This Court previously has held that *719 a taxpayer may be permitted the deduction where he sustains a loss as a result of a partial demolition of a building he owns when making alterations to the building; the taxpayer does not need to demolish the entire building. Gilman v. Commissioner,72 T.C. 730 (1979) (where the taxpayer removed air conditioning units and demolished the roof of a one story office building which he owned in order to construct a second story); for cases decided pursuant to the provisions of the predecessor regulation, article 142 of Regulation 62, see First National Bank of Goodland, Kansas v. Commissioner,5 B.T.A. 1174 (1927); Steinbach Company v. Commissioner,3 B.T.A. 348 (1926); Burnside Steel Co. v. Commissioner,3 B.T.A. 20 (1925); First National Bank of Evanston, Wyoming v. Commissioner,1 B.T.A. 9 (1924). Thus, if petitioner otherwise is entitled to its claimed demolition loss deduction, the fact that the building demolition was partial, and not total, would not preclude entitlement to the deduction. We must now consider whether the claimed deduction is otherwise allowable. Respondent contends that, in order *720 for a demolition loss deduction to be allowable, petitioner must establish that it had a basis in the demolished assets. We agree. Section 165(b) [4] and case law [5] confirm respondent's position. It is clear that McDonald's owned the land, building and heating and cooling system in which petitioner's restaurant operated. It leased these assets to petitioner pursuant to a twenty year lease. Petitioner does not have a basis in the demolished walls, roof, flooring and other structural components of the restaurant; petitioner's interest is limited to a leasehold interest. Therefore, regardless of the portion of the contractor's work estimated to be attributable to the demolition of the component parts of the building, petitioner is not entitled to a demolition loss deduction under section 165(a). *721 On brief, petitioner raises for the first time an alternative argument. Petitioner contends that it is entitled to a section 162 business expense deduction for the demolition costs. By reply brief, respondent takes the position that petitioner failed to raise this argument timely. According to Rule 31(a), Tax Court Rules of Practice and Procedure, the "purpose of the pleadings is to give the parties and the Court fair notice of the matters in controversy and the basis for their respective positions." Each party should have a fair opportunity to respond to the issues and to the arguments of the opposing party. A basic consideration is whether the opposing party is surprised, disadvantaged or prejudiced by a previously unannounced issue or argument. Estate of Horvath v. Commissioner,59 T.C. 551, 555-556 (1973); Gerber v. Commissioner,32 T.C. 1199, 1200-1201 (1959). In the instant case, it is clear that respondent is not prejudiced by allowing petitioner to make the section 162 argument for the first time on brief. This case is fully stipulated and it appears that all facts relating to the enlargement of the building were stipulated. There *722 was no trial during which respondent might have attempted to prove facts to show the inapplicability of section 162 and respondent does not contend that any additional facts are necessarcy to the resolution of this issue. On reply brief, respondent has discussed the reasons that petitioner should not be allowed to deduct the demolition loss as an ordinary and necessary business expense. We therefore conclude that respondent had a fair opportunity to respond to petitioner's contention and, accordingly, we will not reject petitioner's argument on the basis that it was first raised in its brief. Petitioner addresses the section 162 argument by asserting that the demolition expenses were "ordinary and necessary" within the meaning of the statute. Petitioner explains that because McDonald's requested all franchisees to remodel their restaurants to conform with the national organization's changed philosophy, such demolition costs were common and thus "ordinary." Petitioner states that the expenditure was "necessary" because if it, or any other franchisee, had chosen not to remodel, it would have irreparably injured its business relationship with the national McDonald's office. *723 Respondent argues that petitioner's expenditures were capital in nature and not deductible as business expenses under section 162. We agree with respondent. It has long been held that where a lessee makes permanent improvements on or to leased property used in his trade or business, the cost is a capital expenditure notwithstanding the deductibility of rental payments made for the continued use or possession of the property. Here the cost of any demolition such as removing walls was a part of the cost of the improvement made by petitioner to the leased property. Section 178 sets forth the rules for determining the amount allowable to a lessee as a deduction for depreciation or amortization. In this case, in the notice of deficiency, respondent has allowed petitioner to deduct amortization of the costs associated with the demolition over the remaining life of the lease. This is an appropriate method for recovery by petitioner for its capital expenditures in this case. In accordance with the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. In its petition, petitioner states that "An intangible part of this 'demolition loss' expense to the taxpayer, not taken on the tax return, was lost business and lost profits due to the disruption of business during the period of time that the renovation was going on." We gather that petitioner has made no claim for this loss. In any event, clearly unrealized potential profits are not a loss under sec. 165(a).↩
3. Sec. 165. LOSSES. (a) GENERAL Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.↩
4. Section 165(b) provides: (b) AMOUNT OF DEDUCTION.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. See also section 1.165-3(b)(1), Income Tax Regs., which in pertinent part, states: The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. * * * ↩
5. Crowell Lumber and Grain Co., v. Commissioner,6 B.T.A. 826 (1927); First National Bank of Goodland, Kansas v. Commissioner,5 B.T.A. 1174 (1927); Compare Gilman v. Commissioner,72 T.C. 730↩ (1979), where, in an unusual case, we allowed the taxpayer a demolition loss deduction for the cost of demolishing the roof of his one-story building when converting it to a two-story structure. As a part of the roof's demolition cost, we allowed the taxpayer to deduct his expenses incurred in removing old air conditioner units, located on his roof but owned by the tenants, and in replacing them with new ones which he purchased for the tenants. We reasoned that the cost of the removal and replacement of the air conditioners was an inseparable and integral part of the total cost of demolishing the roof of the taxpayer's building.