Arthur GLICKMAN; Herman Glickman and Ruth Glickman; and Aaron Glickmand and Freda Glickman, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 291–293, Dockets 24889–24891.

United States Court of Appeals Second Circuit.

Argued May 12, 1958.

Decided June 5, 1958.

Milton Young and Robert Anthoine of New York, N. Y., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Thomas N. Chambers, Attorneys, Department of Justice, Washington, D. C., for respondent.

Alger B. Chapman, George Berlstein of New York, and E. Randolph Dale of Washington, D. C., Chapman, Walsh & O'Connell, New York City, of counsel, amici curiae.

Before CLARK, Chief Judge, and SWAN and LUMBARD, Circuit Judges.

SWAN, Circuit Judge.

This petition involves deficiencies in income taxes for the calendar year 1950 of three taxpayers, Arthur, Herman and Aaron Glickman. The three cases were consolidated in the Tax Court proceedings and its decisions have been appealed to this court by a single petition.[1]

The issue presented is whether gains realized by each of the taxpayers in 1950 are properly taxable as capital gains, as they claim, or as ordinary income, as the Tax Court held in reliance upon § 117(m) of the Internal Revenue Code of 1939, as amended by § 212 of the Revenue Act of 1950, 26 U.S.C.A. § 117(m), which relates to "collapsible corporations." The findings of fact and opinion of the Tax Court are reported in T.C.Memo.1957–124.

The facts may be summarized as follows: In February 1949 the taxpayers organized a New York corporation (for brevity hereafter referred to as Mott) for the purpose of constructing an apartment project to be financed by a mortgage loan insured by the Federal Housing Administration (F. H. A.) pursuant to § 608 of the National Housing Act, 12 U.S.C.A. § 1743. Mott acquired vacant land in Far Rockaway, New York, at a cost of $59,000. F. H. A. issued a commitment to insure a mortgage loan to Mott, as intended mortgagee, not to exceed in amount $1,066,500. for the construction of a 126 family apartment project to be known as Bayswater Gar·

---

1. Ruth Glickman, the wife of Herman, and Freda Glickman, the wife of Aaron, are petitioners only because the husbands and wives filed joint income tax returns for 1950. Herman and Aaron are brothers. Arthur, the son of Aaron and Freda, filed a separate return. All three returns were filed with the Collector of Internal Revenue for the First District of New York. This court has jurisdiction of the petition, § 7482, I.R.C.1954, 26 U.S.C.A. § 7482.

dens. Mott obtained the money from the Manhattan Company, and the apartment project was constructed for $55,400 less than the insured mortgage loan. From the time of Mott's incorporation until the taxpayers sold their shares as hereafter mentioned, the taxpayers were the only common stockholders and the only officers and directors of Mott. In January 1950 the directors resolved to write up the value of the corporate property, so as to create a capital surplus on its books, and on January 13 Mott distributed $55,000. in cash to its common stockholders. In the distribution Arthur and Aaron received $13,750 each, and Herman $27,500. The cost basis of their stock was $500 each for Arthur and Aaron, and $1,000. for Herman. All three sold their common shares on August 1, 1950, pursuant to their May 10th contract to sell, at a price which gave Arthur and Aaron $23,411.70 each, and Herman $46,823.39. Mott was not liquidated and its present shareholders operate the project pursuant to F. H. A. regulations and the terms of the mortgage between Mott and the Manhattan Company.

In reaching its decision that the gains realized by the taxpayers, from the cash distribution by Mott and from the sale of their stock should be taxed as ordinary income pursuant to § 117(m), the Tax Court relied upon two of its own prior decisions, Burge v. Commissioner, 28 T.C. 246, and Weil v. Commissioner, 25 T.C. 809. It considered the Glickman cases indistinguishable from Burge in all material respects. Burge was subsequently affirmed by the Fourth Circuit, 253 F.2d 765, Judge Parker writing for the court. We are in entire agreement

with Judge Parker's opinion. The Weil decision was affirmed by the Second Circuit in 252 F.2d 805. These two cases obviate the necessity of lengthy discussion of the petitioners' various contentions which assert that the Tax Court erred in holding Mott to be a "collapsible corporation," as defined in § 117(m).[2]

One of the petitioners' contentions, Point VI of their brief, is that Mott was not a collapsible corporation "because it was not a temporary corporation used to convert ordinary income into capital gain." In support of this contention they refer to the legislative history of the section. It is true that in the discussion of the evils which the statute was intended to prevent, there is frequent mention of cases where liquidation of the corporation occurred; but, as stated by Judge Parker [253 F.2d 769], "it is clear from the committee reports that it was not intended that the legislation be limited to such cases and the act as passed is not so limited." We agree. The statute expressly refutes the idea that the corporate life must be cut short; it taxes, "Gain from the sale or exchange (*whether in liquidation or otherwise*) of stock * * *". [Italics added.]

In Point IV of their brief the petitioners argue that § 117(m) does not apply to the cash distribution received by them on January 13, 1950. A similar contention was made and overruled in the Burge case. It will suffice to say that we are in agreement with the reasons given by the Tax Court and by Judge Parker for rejecting it.

The Tax Court found that the taxpayers' intention to make the cash distri-

---

2. § 117(m) (2) (A) defines the term as follows:

"(2) *Definitions.*—

"(A) For the purposes of this subsection, the term 'collapsible corporation' means a corporation formed or availed of principally for the manufacture, construction, or production of property, * * * or for the holding of stock in a corporation so formed or availed of, with a view to—

"(i) the sale or exchange of stock by its shareholders (whether in liquidation

or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, producing * * * the property of a substantial part of the net income to be derived from such property, and

"(ii) the realization by such shareholders of gain attributable to such property."

The applicable Regulation is too long to be quoted, Treasury Regulations 111, §. 29.117–11.

bution was formed about January 1, 1950. The petitioners contend that this was too late. They argue that the requisite "view" must exist when the corporation is formed or at least when construction is begun. We agree with Judge Parker's statement in Burge: "It is not necessary that the 'view' exist when the corporation is formed. It is sufficient that it exist when the corporation is 'availed of' \* \* \*". Since the corporation may at any time during its corporate life be "availed of" for the proscribed purpose, subject, of course, to the limitations imposed by § 117(m) (3), it seems surprising that the Regulations have adopted a narrower interpretation of the statute, and require the requisite view to exist "during the construction \* \* \*" or to be "attributable" to "circumstances which reasonably could be anticipated by the time of such \* \* \* construction." We are disposed to disagree with so narrow an interpretation, but whether the Regulation is valid need not be determined now. The Tax Court assumed it to be valid, and this assumption, if wrong, was unduly favorable to the petitioners. The court then found that "construction was not completed until some time after the middle of January 1950."

This finding the petitioners say is erroneous because construction was "substantially" completed by December 7, 1949 when the municipal authorities issued their final certificate of occupancy. But we agree that under the correct interpretation of the statute "construction" should be defined technically to mean all construction required to perform the contract completely.[3] Concededly something remained to be done after January 1 to complete the buildings and landscape the

grounds as required by the contract. Final inspection by the F. H. A. inspector was not made until January 17, 1950. As stated by the Tax Court in the Weil decision at page 815: "The statute is concerned with the realization of 'net income from the property.' It aims at a situation where before a substantial part of that net income has been realized, the individual stockholders take action designed to result in capital gain."

The petitioners further contend that the gains recognized on the cash distribution and the sale of stock are not within § 117(m) because at least 30% of those gains was attributable to appreciation on the value of the land "apart from building construction." [4] This is far too narrow an interpretation of the statute to be accepted. As to the cash distribution the Tax Court correctly held that all of it was directly attributable to the constructed property, since it was paid out of the funds advanced to Mott on the F. H. A. mortgage. The petitioners say that the Tax Court found as a fact that the "value of the land alone, at $1 per square foot, totaled $120,945." The entire statement from which the quotation is taken appears in the margin.[5] We think the petitioners have misinterpreted the court's statement. It made no finding that the land was worth $1 per square foot apart from the constructed building. Nor did Mott itself so treat the land value; its tax return for 1950 put down the land at cost, $59,000. and ascribed the increase in value of its property to "building fixtures and equipment."

The final contention asserts that even if the cash distribution is deemed to fall within § 117(m) the gain on the stock sale is not taxable under that section. The petitioners concede that a literal

---

3. See discussion in Weil v. Commissioner, 28 T.C. 809.

4. The 30% limitation is imposed by subdivision (3) (B) of § 117(m).

5. "Early in January 1950, in answer to Herman's inquiry his accountant reported that if a recognized appraisal showed that improvements made were worth more than cost, Mott could distribute cash to its shareholders. Herman requested that a real estate firm make an immediate appraisal which on January 10, 1950 valued the land and buildings at $1,249,431. The value of the land alone, at $1 per square foot, totaled $120,945."

reading of subdivision (2) (A) would support the Tax Court's result but urge that the distribution and the stock sale should be tested separately. We agree with the Tax Court's view that the cash distribution brought Mott within the statutory definition. The statute contains no provision relieving a corporation from its "collapsible" status once an event has occurred which brings it within that definition. Although at first glance so literal an application might seem unfair, it is perfectly consistent with the purpose of the statute to tax as normal income all gains received before the realization of a substantial portion of the net income to be derived from the property. And if, subsequent to a condemned distribution, but prior to a stock sale, the corporation realizes a substantial part of the net income, a court should have no difficulty in holding § 117(m) inapplicable to such transaction.

We see no error in decision. It is affirmed.