OPINION. Turner, Judge: Under section 337 of the Internal Revenue Code of 1954,[5] no gain or loss is to be recognized from the sale or exchange of property by a corporation, if on or after June 22, 1954, it adopts a plan of complete liquidation and all of the assets of the corporation are distributed in complete liquidation within the 12 months’ period beginning on the date of the adoption of the plan, provided that the property is not stock in trade or of a kind which would properly be included in the inventory of the corporation, or installment obligations acquired on the sale of such stock in trade or property subject to inventory. In subsection (c) (1) (A)[5] of section 337, it is provided, however, that section 337 shall not apply to any sale or exchange made by a collapsible corporation as defined in section 341(b) of the Code. Based upon the plan of complete liquidation adopted on July 23, 1956, and the distribution by Southwest of all its assets by November 13, 1956, Southwest, claiming that the provisions of section 337 were applicable to the sale of its properties on October 1, 1956, reported no gain from such sale in its return for its final taxable period ended November 14,1956. The respondent in his determination of deficiency determined that Southwest was a collapsible corporation within the meaning of section 341 (b) of the Code and that the gain realized on the sale of the corporate properties is to be recognized as taxable income for such period. According to section 341(b),[6] a collapsible corporation means a corporation formed or availed of principally for the manufacture, construction, or production of property, or for the purchase of property, with a view to the sale or exchange of the stock of the corporation by its shareholders, or a distribution by the corporation to its shareholders, before realization by the corporation of a substantial part of the taxable income to be derived from the property manufactured, constructed, or purchased, and with a view to the realization by the shareholders of gain attributable to such property. For the purposes of section 341, property covered by the said section means property held for less than 3 years which is property used in the corporation’s trade or business, as defined in section 1231(b) of the Code, but without regard to any holding period therein provided. By subsection (d) (3) of section 341, it is provided that section 341 does not apply to gain realized by a shareholder with respect to his stock in a collapsible corporation if realized after the expiration of 3 years following the completion of such manufacture, construction, production, or purchase of the property. It is the position of the petitioners that Southwest was not a collapsible corporation within the meaning of section 341 (b), and that the provisions of section 337 apply. The respondent did not determine and he makes no claim here that section 337 is not applicable, provided Southwest was not a collapsible corporation within the meaning of section 341 (b). For determining whether Southwest was a collapsible corporation under section 341 (b), the question, of course, is whether it was formed or availed of for the purchase of the properties later sold by it to Security, with a view to a distribution to its shareholders before Southwest realized a substantial part of the taxable income to be derived from the properties purchased and with a view to the realization by the shareholders of gain attributable to the properties. The respondent based his determination, and now rests his contention on the proposition that Southwest was formed and availed of for the purchase and resale of the Medico-Dental properties, and not for the purpose of owning and holding the properties for the production of income therefrom. In support of this contention, he argues that the need of Security Bank for a new main office was fully known to Sutherland, Black, and Margolis at the time Southwest was organized and the property was purchased; that the resale of the property by Southwest, if not the motivating factor in the organization of Southwest and its purchase of the properties, was contemplated unconditionally, conditionally, or as a recognized possibility, which fact brings Southwest within the meaning of the income tax regulations and the provisions of section 341 (b). Section 1.341-2(a) (2) of the Income Tax Regulations does carry the provision recited. In section 1.341-2(a) (3), however, it is provided that a corporation is “formed or availed of with a view to the action described in section 341(b) if the requisite view existed at any time during the * * * purchase referred to in that section.” The provision is followed, however, by the further provision that “if the sale, exchange, or distribution is attributable solely to circumstances which arose after the * * * purchase (other than circumstances which reasonably could be anticipated at the time of such * * * purchase), the corporation shall, in the absence of compelling facts to the contrary, be considered not to have been so formed or availed of.” On the other hand, if the sale, exchange, or distribution is attributable to circumstances present at the time of purchase, the corporation absent compelling facts to the contrary is, according to the regulations, considered to have been so formed or availed of. While it is true that Security Bank had, at the time Southwest was organized and purchased the Medico-Dental properties, outgrown its existing facilities for its main office and the acquisition of suitable property therefor in the near future was a recognized necessity, we are wholly satisfied from the evidence that, insofar as Security Bank was concerned, it had no thought or intention of locating in or near the site of the Medico-Dental properties. Testifying to that effect were various officers and directors of Security Bank, who unlike Sutherland and Black had no connection with or interest in Southwest. Their testimony in that respect was definite and quite convincing. It was not until a year or more after the organization of Southwest and the purchase by it of the Medico-Dental properties that Security Bank began to give any thought or consideration to a location beyond the Broadway area. Furthermore, there is no question that the sale by Southwest of its properties to the bank when the matter was finally brought up early in 1956, was met with strong resistance on the part of Black, Margolis, and Sutherland. Sutherland, Black, and Margolis all three testified categorically that the organization of Southwest and its purchase of the Medico-Dental properties was with a view to the continued ownership of the properties by Southwest for the production of operating income therefrom and there was no thought, purpose, or intent to resell. There is no claim on the part of the respondent that the corporation was thinly capitalized and it was the thought of Black in particular and Margolis that the properties could be operated after their purchase so as to produce sufficient income from rents to liquidate over a long term the indebtedness placed against it in connection with the purchase and thus result in unencumbered ownership of the property by Southwest. We found the testimony of Black and Margolis persuasive and convincing, and we are fully satisfied that in the organization of Southwest and its purchase of the Medico-Dental properties, there was no purpose or intention of resale under any circumstances then existing, and that when the property was sold, it was because of circumstances which arose more than a year after the purchase, which circumstances were not within reasonable anticipation at the time of the purchase. It is accordingly our conclusion that Southwest was not organized or availed of for the purchase of the Medico-Dental properties with the view proscribed by section 341, and was not a collapsible corporation within the meaning of subsection (b) thereof. The parties, on brief, have cited numerous cases and have made arguments therefrom in support of their positions. The respondent, in his opening brief, cited Elisabeth M. August, 30 T.C. 969, affd. 267 F. 2d 829, and Jacobson v. Commiissioner, 281 F. 2d 703, reversing 32 T.C. 893. In citing the Jacobson case, be argues that the testimony of petitioners’ witnesses was tailored to fit the holding of the reversing court, and must be heavily discounted. The petitioners also cited and do heavily rely on Jacobson v. Commissioner, and seek to distinguish such cases as Burge v. Commissioner, 253 F. 2d 765, affirming 28 T.C. 246, and Glickman v. Commissioner, 256 F. 2d 108, affirming a Memorandum Opinion of this Court. They also cite a number of other cases, as did the respondent in his reply brief. When the facts as found are considered, none of the cases cited call for or require a conclusion other than that stated above. In the cases cited, the corporation had been organized for the construction of income-producing property, and not for the purchase of an income-producing property already in existence. And in the cases cited the troublesome question was whether the intent on the part of the stockholders to sell the stock or to cause the corporation to make the distribution or distributions had existed at or prior to completion of construction, or whether the sale or distribution was attributable solely to circumstances which arose after construction and not due to circumstances present at and during construction. In each instance, the cases were resolved upon a determination of fact as to whether or not the view to such sale or distribution existed at or prior to completion of construction, or arose thereafter. We have applied the same principle here, and, as indicated above, have concluded on the evidence that the view to the sale by Southwest of its properties and the distribution of the proceeds to the stockholders did not exist at the time of purchase, but arose a year or more thereafter. See and compare Charles J. Riley, 35 T.C. 848. A determination of the depreciation issue remains to be dealt with, and the question there is as to the useful life of the Medico-Dental Building at the time it was acquired by Southwest. Southwest based its computation of depreciation on an assumed 25-year useful life. The respondent in his determination of deficiency determined that the useful life of the building was 35 years from the date of purchase. His determination is presumptively correct, and the burden is on the petitioners to show that the useful life of the building was less than 35 years. Both parties called one witness to support the position taken, the witness called by petitioners being one of the individuals who appraised the properties incident to the obtaining of the loans from Atlantic and Lamar at the time of purchase by Southwest. We listened to the witnesses. We have considered their testimony. We have also taken into account other facts relating to the useful life of the building as shown by other evidence of record. We are fully convinced that the positions taken by the parties represent the extremes as to the useful life of the building as of the date of acquisition, and that the true useful life lies between those two extremes. Considering the evidence and exercising our best judgment as to the facts shown, we have concluded that the useful life of the Medico-Dental Building at the time of its purchase by Southwest was 30 years. We have so found as a fact, and so hold. The facts show that petitioners Sutherland, Margolis, Atlantic, and Lamar were transferees of Southwest under section 6901 of the 1954 Code and that petitioner Black was not. We so hold. Decisions will he entered under Bule 50. SEC. .337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) General Rule. — If— (1) a corporation adopta a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. (b) Property Defined.— (1) In general. — Eor purposes of subsection (a), the term “property” does not include— (A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business. (B) installment obligations acquired in respect of the sale or exchange (without .regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, * * * [[Image here]] (c) Limitations.— (1) Collapsible corporations and liquidations to which section 333 applies.— This section shall not apply to any sale or exchange.— (A) made by a collapsible corporation (as defined in section 341(b) * * * SEC. 341. COLLAPSIBLE CORPORATIONS. (b), Definitions.— (1) Collapsible cobpokation. — For purposes of this section, tie term “collapsible corporation” means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (in the hands of the corporation) is property described in paragraph (3), or for the holding of stock in a corporation so formed or availed of, with a view to— (A) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise),, or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing,, producing, or purchasing the property of a substantial part of the taxable income to be derived from such property, and (B) the realization by such shareholders of gain attributable to such property. * # * Xi * ‡ x< (3) Section an assets. — For purposes of this section, the term “section 341 assets” means property held for a period of less than 3 years which is— ******* (D) property described in section 1231(b) (without regard to any holding period therein, provided) * * * * * Xi * x< * * (d) Limitations on Application of Section. — In the case of gain realized by a shareholder with respect to his stock in a collapsible corporation, this section shall not apply— * Xt Xi A Xi xi xi ,(3) to gain realized after the expiration of 3 years following the completion of such manufacture, construction, production, or purchase.