**Harry J. GOODWIN and Kathryn G. Goodwin, Richard C. Goodwin and Elaine Goodwin, and Howard G. Goodwin and Margot Goodwin**

v.

**The UNITED STATES.**

**No. 187–60.**

United States Court of Claims.

July 12, 1963.

Converse Murdoch, Philadelphia, Pa., for plaintiffs. Samuel Kalikman, Camden, N. J., on the briefs.

Theodore D. Peyser, Jr., Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. Edward S. Smith and Philip R. Miller, Washington, D. C., on the brief.

Before JONES, Chief Judge and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

LARAMORE, Judge.

This is an action to recover income tax and assessed interest paid for the year 1951, plus statutory interest.

The taxpayers in this case are Harry Goodwin, his sons Richard and Howard and their respective spouses. In the fall of 1949, Harry Goodwin (hereinafter referred to as "Goodwin") and one Bernard Weinberg decided to construct a garden apartment project in Barrington, New Jersey. To carry out this project two corporations were formed. Barrington Manor Construction Corporation (hereinafter referred to as "Construction"), was organized on October 4, 1949, and it issued 200 shares of common stock, 150 shares to Weinberg and his wife and 50 shares to Goodwin.

Barrington Manor Apartments Corporation (hereinafter referred to as "Apartments"), was organized on November 7, 1949. Except for special stock issued to the Federal Housing Authority (hereinafter referred to as "FHA") for security purposes, Apartments was a wholly owned subsidiary of Construction.

A mortgage loan of $2,262,200, guaranteed by FHA, was obtained to finance

construction of the Barrington Manor project. On or about November 9, 1949, Apartments and Construction entered into a construction agreement whereby Construction agreed to build the project for Apartments for $2,262,200, an amount equal to the full amount of the loan referred to above.

Weinberg was a stockholder, director, president and treasurer of Construction. Until July 25, 1951, Goodwin was vice-president, secretary, and project manager of Construction. Goodwin and Weinberg worked together on the Barrington Manor project and had practically daily contacts regarding the affairs of Construction.

During the years 1950 and 1951 Goodwin and Weinberg were also associated in a number of construction projects in addition to Barrington Manor. Sometime during the winter of 1950–1951, Goodwin and Weinberg decided to dissolve their association in most of their various, common, business ventures. The major factor leading to this dissolution was the numerous discussions and disagreements between them. Transfer of Goodwin's stock back to the corporation was not made effective until July 25, 1951. Construction of the project was then complete. Notwithstanding this dissolution, Goodwin and Weinberg did not at that time terminate all their association. It is not clear when, in the course of the discussions relative to the dissolution, Weinberg first proposed, or when Goodwin finally agreed, that, as one element of the readjustment of their interests and their working relationship, Goodwin's 50 shares of Construction stock should be turned back to Construction. Nor is it clear whether that proposal was either first made, or finally agreed to, before or after physical construction of the Barrington Manor project was completed. It is clear, however, that the redemption or sale of the stock by Goodwin was attributable to circumstances present during construction.

During its fiscal year ended August 31, 1951, Construction received from Apartments $448,061.75. This amount was Construction's profit from building the Barrington Manor project.

In April of 1951, after Goodwin and Weinberg had agreed to separate their interests, Goodwin formed a partnership with his sons, the plaintiffs Richard C. and Howard G. Goodwin. The partnership was known as "Goodwin Organization." The partnership was recognized by the Internal Revenue Service for tax purposes for the year 1951 and later years. Each partner had a one-third interest. In June of 1951, Goodwin transferred his 50 shares of Construction stock to the partnership as a capital contribution.

As a result of the sale of the 50 shares of Construction stock on July 25, 1951, the Goodwin Organization realized a gain of $106,900. In each of the three income tax returns filed by the partners for 1951, $35,633.33, or one-third of the $106,900, was reported as long-term capital gain.

Upon audit of plaintiffs' 1951 returns, the Internal Revenue Service determined that the gain on the sale of Construction stock was ordinary income on the ground that Construction was a collapsible corporation within the meaning of section 117(m) of the Internal Revenue Code of 1939. Deficiencies were assessed on the basis of this determination and later paid by plaintiffs.

Timely claims for refund were filed for the year 1951 on the ground that the gain should be treated as long-term capital gain. These claims were disallowed and this suit was timely commenced on May 19, 1960.

The single question presented in this case is whether or not plaintiffs were entitled to treat the gain from the sale of the stock in Barrington Manor Construction Corporation as long-term capital gain or whether it should be treated as ordinary income. A determination that the gain should be treated as ordinary income would carry the necessary implication that Construction was a collapsible corporation.

The problem in this case was dealt with by the Tax Court in two recent

cases. The facts in each of the Tax Court cases are almost identical to those involved in the case at bar.

In the case of Sylvester J. Lowery and Rosemary P. Lowery v. Commissioner, 39 T.C. 959 (Docket No. 69978), March 21, 1963, the Commissioner of Internal Revenue sought to impose the collapsible corporation rules in a situation in which the taxpayers were minority stockholders in several corporations. In the case of two of the corporations, only the minority taxpayer's stock was redeemed. In this situation the Tax Court held that the collapsible corporation provisions were not applicable because of the taxpayer's minority position, coupled with a continuation of ownership by the then majority stockholders. The Tax Court, in its opinion, stated as follows:

"Thus, in many respects, the transactions which took place with respect to Parkway and Raleigh are similar to those which occurred with respect to Carver and Duval. One material distinction exists, however. In both Parkway and Raleigh, those owning the majority of the stock and who were not only in a position to, but did, in fact, control their policies, did not sell their stock but continued to operate the corporations. Neither corporation was availed of "with a view to" the action described in section 117(m) (2) (A), by those owning a majority of the stock and controlling its policies. It necessarily follows that petitioner did not "share" in such a view. Neither corporation was "collapsible" or was ever in fact collapsed. The situation here presented is distinguishable from those cases in which corporations have been held collapsible even though the corporation as such continued in existence since, in those cases, all shareholders sold their stock with a view, shared by all, to the realization of gain prior to the realization by the corporation of a substantial part of the net income to be derived from the property constructed. Cf. Burge v. Commission-

er, 253 F.2d 765 (C.A.4, 1958); Glickman v. Commissioner, 256 F.2d 108 (C.A.2, 1958).

\* \* \* \* \* \*

"In our opinion section 117(m) was not intended to apply where, as here, a minority shareholder is compelled, because of circumstances over which he had no control, to dispose of his investment in a corporation which is thereafter continued in operation by the majority shareholders. The legislative history does not indicate it was so intended and we are aware of no case which has held otherwise. Accordingly, it is our opinion, and we so hold, that neither Parkway nor Raleigh was a collapsible corporation within the meaning of section 117(m) and that the gain derived by petitioner from the sale of his stock in each of these corporations did not constitute ordinary income but was capital gain."

Again, in Ralph J. Solow and Celia O. Solow v. Commissioner, T.C.Memo. 1963-87 (Docket No. 75595), March 27, 1963, the Tax Court held the collapsible corporation provisions were not applicable in the case of a minority stockholder whose stock was redeemed at a time when the majority interest was not redeemed. The Tax Court concluded as follows:

"The record indicates that some of the 13 Linwood Park Section projects were completed before an actual view to sell existed and that others were not. But we need not make these determinations, for Sarner never contemplated selling his shares or liquidating the corporations, and we have found as a fact that petitioner was never in a position to determine the policies of any of the 16 corporations, whether by reason of owning a majority of voting stock or otherwise. Indeed, the record supports the proposition that Sarner was the active and dominant shareholder, with petitioner's role that of a "silent partner." We therefore must rely on Sylvester J. Lowery,

39 T.C. 959 (March 21, 1963), and hold that petitioner's gain on the sale of his relevant shares was not within the purview of section 117(m) and the corresponding regulations."

The essence of the Tax Court's rulings is that the collapsible corporation provisions are not applicable in a case in which a minority stockholder has his stock redeemed and the majority stockholder continues to own the corporation. This ruling was based on facts exactly like those present here.[1] Since we agree with the Tax Court's rulings, we hold that plaintiffs' gain should have been treated as long-term capital gain. Consequently, plaintiffs are entitled to recover the amount of the deficiencies assessed and collected, together with interest as provided by law, and judgment is entered to that effect. The exact amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court.

---

1. Defendant cites the recent decision in Braunstein v. Commissioner, 374 U.S. 65, 83 S.Ct. 1663, 10 L.Ed.2d 757, which affirmed the Tax Court, as inconsistent with Lowery and Solow. The Tax Court did not think there was any conflict and neither do we. In Braunstein the issue was whether a transaction which is within the terms of section 117(m) is taken out because the taxpayer could have conducted his affairs differently so as to achieve capital gains treatment, while in this case the question is whether the transaction is within the terms of section 117(m) at all.