Louis BENEDEK and Janet Benedek, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Henry HIRSCH and Myrtle G. Hirsch, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Alexander P. HIRSCH and Mary E. Hirsch, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Martin H. BENEDEK and Leonore Benedek, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 568–71, Dockets 33467–70.

United States Court of Appeals, Second Circuit.

Submitted May 27, 1970.

Decided July 1, 1970.

Arthur C. Silverman, New York City (Golenbock & Barell, New York City, of counsel), for appellants.

David E. Carmack, Atty., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., of counsel), for the Commissioner.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge.

We are here concerned with appeals from four decisions of the Tax Court which present, in a consolidated brief and appendix, the single issue of whether the Tax Court erred in holding certain corporate distributions to be attributable to collapsible assets and therefore taxable to the recipients as ordinary income rather than as capital gains. The Tax Court upheld the Commissioner in his determination of deficiencies totaling $1,228,659.19 in taxpayers' income tax returns for 1950 and 1951.[1]

The facts are not in dispute.

Appellants, together with one other person not involved in the present litigation, owned all the stock of Newstrand Realty Corporation. In 1947 Newstrand bought an unimproved tract of land in Brooklyn at a price of $1,764,238.66. The tract contained a total of 1,144,525 square feet of which 55,900 square feet were sold by Newstrand and 189,700 square feet were condemned by the City of New York.

In 1949 the stockholders of Newstrand organized five corporations, called Farragut Gardens Nos. 1 to 5, for the purpose of leasing the land owned by Newstrand and constructing housing projects on this land. The Farragut corporations were to finance the projects through mortgages insured by the Federal Housing Administration.

The leases from Newstrand to the Farragut corporations, executed in 1949, were in the form prescribed by the FHA and were for a term of 99 years, renewable at the option of the lessees for an additional 99 years. The leases provided that should the mortgagee or the FHA acquire title to the leaseholds by reason of a default by the mortgagors, the mortgagee or the FHA could acquire the lessor's fee upon payment of a recapture price totaling $1,924,000.

Mortgages were negotiated in the total amount of $21,719,300 and were insured by the FHA. Under FHA policy the amount of the insured mortgages was equal to 90 percent of estimated replacement cost of the property. Thus the value of the leaseholds was not considered in computing the amount of the mortgages.

The Farragut corporations constructed 59 apartment buildings on the leased property at a total cost of $18,118,987.

In 1949, 1950 and 1951 the Farragut corporations distributed a total of $3,158,000 to the stockholders. At the time the distributions were made the Farragut corporations had no accumulated earnings. Indeed the corporations sustained operating losses at least through 1954. They were engaged in no activity other than the construction and operation of the apartment buildings.

The leaseholds for which the Farragut corporations had paid Newstrand "little or nothing" (apparently nothing) were found by the Tax Court to have a fair market value of $1,517,333 at the time of the distributions to stockholders. No part of this market value was attributable to the construction of the apartment buildings on the leaseholds. The leaseholds, the Tax Court found, would have had the designated market value if the land had remained unimproved.

The taxpayers reported the amounts received from the cash distributions of the Farragut corporations as capital gains. The Commissioner ruled that the distributions were taxable to the recipients as ordinary income. The Commissioner was upheld by the Tax Court which fixed the total of the deficiencies for 1950 and 1951 as $1,228,659.19.

The taxpayers concede that the Farragut corporations were "collapsible corporations" as defined by Section 117(m) of the Internal Revenue Code of 1939, 64

1. Louis Benedek, Henry Hirsch, Alexander P. Hirsch and Martin H. Benedek are referred to as the taxpayers or the appellants since their wives are parties only because joint income tax returns were filed.

Stat. 934 (now Int.Rev.Code of 1954, § 341), which provides that distributions by collapsible corporations shall be treated as ordinary income. Taxpayers contend, however, that the distributions they received come within the limitation provision of Section 117(m) (3) (B) which provides that the general rule of Section 117(m) "shall not apply to the gain recognized during a taxable year unless more than 70 per centum of such gain is attributable to the [collapsible property, i.e., here the apartment buildings]." The taxpayers claim that of the total cash distribution of $3,158,000, almost 50% ($1,517,333) is "attributable" to increase in the value of the leaseholds and not to the collapsible property.

There appears to us to be no special mystery about the word "attributable" as it is used in the statute. The question to be answered is "where did the money come from?" The answer will ordinarily be the source to which the gain is "attributable." Here it is perfectly clear that the money came from the FHA insured loans.[2] The distributions were made from the excess of the loans over the cost of building the apartments. The corporations had no other source of cash, since their operations of the apartment projects had resulted in a loss and they were engaged in no other business. Considered conversely the corporations' cash distributions could not have represented the value of the leaseholds because the profit on the leaseholds was not realized before or during the period of the distributions. Accepting, as we do, the findings of the Tax Court, the corporations had a valuable asset in the leaseholds and at some future time they might have realized on that asset, presumably by selling the buildings together with the leaseholds. If they did so they might have additional cash to distribute to the stockholders and the tax treatment of such a distribution would constitute a quite different question from that now before us.

As the court said in Payne v. CIR, 268 F.2d 617, 621 (5th Cir. 1959): "The funds which provided [the distributions] were a loan secured by the improved property. The only basis for the making of F.H.A. loans was the construction of rental property. Without the buildings there would have been no loan. Without the loan there would have been no redemption of the stock. We think the gain was 'attributable' to the property constructed. The same conclusion was reached in Glickman v. C.I.R., 2 Cir., 256 F.2d 108, where it was said on page 111:

'The petitioners further contend that the gains recognized on the cash distribution and the sale of stock are not within § 117(m) because at least 30% of those gains was attributable to appreciation of the land "apart from building construction." This is far too narrow an interpretation of the statute to be accepted. As to the cash distribution the Tax Court correctly held that all of it was directly attributable to the constructed property, since it was paid out of the funds advanced * * * on the F.H.A. mortgage.' "

See also Mintz v. CIR, 284 F.2d 554, 559–560 (2d Cir. 1960); Short v. CIR, 302 F.2d 120, 124–125 (4th Cir. 1962).

Appellants seek to rely for support for their position on Treas. Reg. 118, § 39.-117(m)-1 (c) (3) (ii) (1953) which provides in pertinent part:

"For the purpose of this limitation, the gain attributable to the property referred to in section 117(m) (2) (A) is the excess of the recognized gain of the shareholder during the taxable year upon his stock in the collapsible corporation over the recognized gain which the shareholder would have if the property had not been * * * constructed."

The answer to the contention based on this sentence from the Regulations is

---

2. Income arising from government insured loans is given special treatment under §

312(j) of the Internal Revenue Code of 1954.

that, since without the construction there would have been no mortgage money to distribute, there was *no* "recognized gain which the shareholder would have if the property had not been \* \* \* constructed."

The decision of the Tax Court is affirmed.